# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## GREENVILLE DIVISION

**LOL FINANCE CO.**                                                                          **PLAINTIFF**

**V.**                                                            **CIVIL ACTION NO. 4:09cv23-MS**

**EASY MONEY CATFISH COMPANY;**
**MITCHELL PEARSON;**
**PATRICIA M. PEARSON;**
**ROBERT N. PEARSON;**
**GEORGIA S. PEARSON; and**
**KEVIN PEARSON**                                                                         **DEFENDANTS**

## ORDER

This cause comes before the court on the motions of defendants Easy Money Catfish Company, Robert N. Pearson, Georgia S. Pearson, Kevin L. Pearson, Patricia M. Pearson, and Mitchell Pearson (collectively "Defendants"), pursuant to Fed. R. Civ. P. 12(b)(1), to dismiss for lack of subject matter jurisdiction. Plaintiff LOL Finance has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motions are not well taken and should be denied.

On April 18, 2007, plaintiff agreed to finance a catfish farming venture to be operated by the defendants, in exchange for three promissory notes, including (1) a $180,000.00 Equipment Promissory Note; (2) a $560,000.00 Land Promissory Note; and (3) a $1,150,000.00 Operating Line of Credit Note. All three notes were secured by Deeds of Trust for real property located in Humphreys County and by a Security Interest in all catfish, and other live fish, feed inventory, fingerlings, machinery and equipment grown or used in the venture. Defendants defaulted on their repayment obligations, leaving an indebtedness of over $2.4 million owed to plaintiff. On December 12, 2008, plaintiff foreclosed on the real property subject to the Deeds of Trust. Plaintiff was the

only bidder at the foreclosure sale and bid $2,404,711.17 on the property. Defendants contend that this fact indicates that their indebtedness to plaintiff has been erased, but plaintiff asserts that, following the foreclosure sale, it commissioned a real estate appraisal which determined that the foreclosed property was worth only $803,865.00. Plaintiff thus argues that a substantial deficiency exists, and it filed this diversity action seeking to recover this deficiency.

It is undisputed that diversity of citizenship exists among the parties, but defendants contend that the $75,000 amount in controversy requirement is not met in this case. In analyzing the amount in controversy issues in this case, the court would first emphasize that the standard of review is highly favorable to plaintiff, in light of the fact that it seeks damages in excess of the jurisdictional amount. It is well settled that "unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir.1998); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288, 58 S.Ct. 586, 82 L.Ed. 845 (1938). "To justify dismissal, 'it must appear to a legal certainty that the claim is really for less than the jurisdictional amount.'" *St. Paul Reinsurance*, 134 F.3d at 1253 (quoting *St. Paul Mercury*, 303 U.S. at 289, 58 S.Ct. 586).

There is some suggestion in the parties' briefs that a preponderance of the evidence standard might apply to the amount in controversy issues in this case. However, this argument confuses the procedures developed by the Fifth Circuit to analyze amount in controversy issues in removal cases where the complaint alleges an indeterminate amount of damages with the standards applicable to cases filed in federal court where the plaintiff specifically seeks recovery in excess of $75,000. In *St. Paul Reinsurance*, for example, the Fifth Circuit noted that "[i]n removal practice, when a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must

prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *Id.* at 1253. This authority is inapplicable here.

The complaint in this case clearly alleges that the $75,000 amount in controversy requirement is met and, while plaintiff phrases its right to recover damages somewhat conditionally, it is clear that it seeks a very large judgment in this case. Plaintiff does not contend that it is owed a fixed, liquidated sum certain. Rather, its theory of the case is that the exact judgment which it recovers will depend on a number of factors, including the actual fair market value of the property and the commercial reasonableness of the foreclosure sale. Plaintiff also asserts that uncertainty exists with regard to the fair market value of the catfish which it foreclosed upon, stating in its brief that:

> On January 29, 2009, LOL Finance Co. foreclosed on the catfish, and other live fish, feed inventory, fingerlings, machinery and equipment secured by the April 18, 2007 Agricultural Security Agreement and April 19, 2007 UCC Financing Statement. LOL Finance Co. bid the same price for this property as it did for the real property, i.e., the indebtedness, to preserve its right to be repaid. The fair market value of this property, however, has not been determined yet as LOL Finance Co. has had to assume control over the farm operations to raise the fingerlings to sell at market. Additionally, LOL Finance Co. has incurred substantial costs and expenses through its mitigation efforts.

In light of the foregoing, it is understandable that plaintiff did not seek a specific dollar amount of damages in its complaint. It seems clear that plaintiff has invoked the diversity jurisdiction of this court in good faith and that defendants are required by *St. Paul Reinsurance* to demonstrate to a legal certainty that the amount in controversy requirement is not met.

Regardless, it seems clear to this court that the amount in controversy requirement would be met in this case even if a preponderance of the evidence standard did somehow apply. In so concluding, the court would emphasize that, at this juncture, its task is not to conduct a quasi-

3

summary judgment inquiry to determine whether plaintiff will actually recover the damages which it seeks. That is the purpose of the actual litigation of this lawsuit. Obviously, federal courts routinely enter dismissals on summary judgment in cases where it turns out that the plaintiff is not actually entitled to recover damages, but this by no means indicates that subject matter jurisdiction is lacking. The Complaint in this case specifically alleges that "[a]s a direct and proximate result of the Defendant's failure to honor their guaranty to repay the loans, the Plaintiff has incurred damages in the following principal amounts less any offset from the sale of the foreclosed properties" and lists the following as the indebtedness owed:

| Loan | Principal | Interest |
|---|---|---|
| Loan No. 540285-Land Note | $560,000.00 | $82,692.82 |
| Loan No. 540286-Equipment Note | $180,000.00 | $26,409.45 |
| Loan No. 130105-Line of Credit | $1,555,905.69 | $17,029.45 |
| TOTALS | $2,295,905.69 | $126,131.72 |

See Complaint, ¶ 24.

As previously alluded to, the principal dispute in this case relates to the extent to which defendants should be given a credit for the $2,404,711.17 which was bid on the property by plaintiff at the foreclosure sale. Defendants cite *Wansley v. First National Bank of Vicksburg*, 566 So.2d 1218, 1223 (Miss. 1990) for the proposition that "[f]or purposes of determining whether a claim for a deficiency exists, the price for which a foreclosing creditor bids in at foreclosure to purchase the property fixes the value of the collateral, so long as the consideration is not so grossly inadequate to shock the conscience of the court."

For its part, plaintiff contends that defendants have misstated the Supreme Court's holding

in *Wansley*, and it argues that *Wansley* actually supports its right to recover hundreds of thousands of dollars in this case. Specifically, plaintiff argues as follows:

> The Defendant relies upon *Wansley v. First National Bank of Vicksburg*, to argue that the foreclosure bid fixes the value of the collateral for the purpose of determining whether a claim for a deficiency exists. *See* 566 So.2d 1218, 1223 (Miss. 1990). The Defendant is wrong and has misstated the holding in *Wansley*, in which the Court clearly stated, "The price obtained at foreclosure *formerly* fixed the value of the collateral for purposes of computing a possible deficiency." *Wansley*, 566 So.2d at 1223 (emphasis added). Relying upon an evolved line of precedents, the Court in *Wansley* announced, "Commercial reasonableness has become our touchstone." *Wansley*, 566 So.2d at 1224. "Every aspect of the sale, including the method, advertising, time, place and terms, must be commercially reasonable." *Wansley*, 566 So.2d at 1225. "*For deficiency judgment purposes…'The legal determination of the adequacy of the purchase price depends upon establishment of fair market value.'*" *Wansley*, 566 So.2d at 1224 *citing Haygood v. First National Bank of New Albany*, 517 So.2d 553 (Miss. 1987). In other words, contrary to the Defendant's argument, the foreclosure price does *not* fix the value of the Defendant's collateral for the purpose of determining a deficiency amount.

It is thus apparent that plaintiff's theory of the case is that, in light of the $803,865 appraisal of the property, it is entitled to a very large deficiency judgment, which might potentially exceed $1 million dollars. Defendants have submitted extensive authority seeking to rebut plaintiff's theory of the case, and this authority may (or may not) eventually prove persuasive to this court. Regardless, the court's task at this juncture is not to determine whether plaintiff's theory of the case has merit, but, rather, to decide whether the $75,000 amount in controversy requirement is met. It is clear to this court that plaintiff seeks in excess of $75,000 in this case, and defendants' motions to dismiss will therefore be denied.

It is therefore ordered that defendants' motions to dismiss [9-1, 11-1] are denied. Plaintiff's motion to strike [23-1] is likewise denied.

SO ORDERED, this the 9th day of October, 2009.

/s/ Michael P. Mills
CHIEF JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI